In The
United States Court of Appeals
For the Eighth Circuit

_____

No. 22-2870
_____

United States of America,

Appellee,

vs.

Edell Jackson,

Appellant.

_____

Appeal from the United States District Court
For the District of Minnesota
The Honorable Donovan W. Frank, Senior District Court Judge, Presiding
_____

**BRIEF OF THE APPELLANT**
_____


Daniel L. Gerdts
331 Second Avenue South, Suite 705
Minneapolis, MN 55401
612 800 5086

Attorney for Appellant
Edell Jackson

# SUMMARY OF THE CASE

Appellant (hereinafter Defendant) Edell Jackson was convicted by a jury of being a felon in possession of a firearm. He was arrested by police in January 2021 on suspicion of having committed an assault, and was found to be in possession of a pistol. Mr. Jackson previously had been convicted of felony cocaine sales in Minnesota. He testified at trial, however, that he believed he had been relieved of his status as a felon, and returned to full citizenship, after completion of his prison sentence and upon discharge from all required supervision. His belief was based on, and supported by, his discharge paperwork that included a notice informing him of the restoration of his civil rights. That notice included a caveat that the right to possess a firearm was not restored for persons who had been convicted of "crimes of violence." Because his cocaine sales were nonviolent, he understood the restoration of his civil rights to be complete.

This appeal asserts that the district court fatally erred in instructing the jury by permitting it to find the required proof of knowledge of his status based solely on the historical fact of his previous conviction without regard for what he believed at the time of the offense. It also asserts that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Defendant, in violation of the Second Amendment.

Defendant respectfully requests fifteen minutes of oral argument.

i

# TABLE OF CONTENTS

**SUMMARY OF THE CASE**.................................................................**I**

**TABLE OF AUTHORITIES** ............................................................**III**

**JURISDICTIONAL STATEMENT**...................................................**1**

**STATEMENT OF THE ISSUES**........................................................**2**

**STATEMENT OF THE CASE** ...........................................................3

**SUMMARY OF THE ARGUMENT** ..................................................**6**

**ARGUMENT** .......................................................................................**6**

   I.   STANDARDS OF REVIEW. ................................................................6

   II.  THE DISTRICT COURT IMPROPERLY INSTRUCTED THE JURY REGARDING THE ELEMENTS OF BEING A FELON IN POSSESSION OF A FIREARM UNDER SECTION 922(G)(1). ..................................................................................................7

   III.  THE STATUTE FORBIDDING THE POSSESSION OF A FIREARM BY A FELON IS UNCONSTITUTIONAL AS APPLIED TO DEFENDANT JACKSON. ..................................16

**CONCLUSION**...................................................................................**22**

**CERTIFICATE OF COMPLIANCE** ..............................................**23**

Appellate Case: 22-2870    Page: 3    Date Filed: 12/07/2022 Entry ID: 5224769

# TABLE OF AUTHORITIES

**CASES**

*Antonyuk v. Hochul*, No. 1:22-CV-986-GTS-CFH, 2022 WL 5239895
(N.D.N.Y. Oct. 6, 2022)..........................................................................21

*Beecham v. United States*, 511 U.S. 368 (1994).........................................12

*Boyde v. California*, 494 U.S. 370 (1990)....................................................14

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019)...............................................18

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)...... passim

*Rehaif v. United States*, 139 S. Ct. 2191 (2019) ................................. passim

*States v. Wisecarver,* 598 F.3d 982 (8th Cir. 2010)....................................14

*United States v. Adams*, 914 F.3d 602 (8th Cir. 2019) ...............................19

*United States v. Asomani*, 7 F.4th 749 (8th Cir. 2021) .................................6

*United States v. Billiot*, 785 F.3d 1266 (8th Cir. 2015) ................................7

*United States v. Bullock*, No. 3:18-CR-165-CWR-FKB,
2022 WL 16649175 (S.D. Miss. Oct. 27, 2022).......................................21

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010)..............................18

*United States v. Edwards*, 946 F.2d 1347 (8th Cir. 1991) .........................12

*United States v. Jenkins*, 792 F.3d 931 (8th Cir. 2015) .............................14

*United States v. Joos*, 638 F.3d 581 (8th Cir. 2011)..................................18

*United States v. Price*, No. 2:22-CR-97, 2022 WL 6968457
(S.D.W. Va. Oct. 12, 2022)....................................................................21

*United States v. Quiroz*, No. PE:22-CR-104-DC,
2022 WL 4352482 (W.D. Tex. Sept. 19, 2022) .......................................21

Appellate Case: 22-2870    Page: 4    Date Filed: 12/07/2022 Entry ID: 5224769

*United States v. Woolsey*, 759 F.3d 905 (8th Cir. 2014)............................................20

*Wegener v. Johnson*, 527 F.3d 687 (8th Cir. 2008).....................................................14

**OTHER AUTHORITIES**

18 U.S.C. § 3231 .........................................................................................................1

18 U.S.C. § 921(a)(20)(B) ..........................................................................................7

18 U.S.C. § 922(g) ............................................................................................. passim

18 U.S.C. § 922(k) .....................................................................................................21

18 U.S.C. § 922(n) .....................................................................................................21

28 U.S.C. § 1291 .........................................................................................................1

C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*,
32 Harvard Journal of Law & Public Policy 695 (Spring 2009).......................18

Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyoming L. Rev. 249, No. 2, Art. 7 (2020) ..18

Minn. Stat. § 609.165, subd. 1 .....................................................................................8

U.S. Const. amend. II                                                                                    17

iv

## JURISDICTIONAL STATEMENT

This appeal from a criminal case follows a federal grand jury indictment on 25 February 2021, charging Defendant with a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court, presided by the Honorable Donovan W. Frank, had jurisdiction pursuant to 18 U.S.C. § 3231.

After a trial in which a jury found Defendant guilty, Judge Frank imposed a sentence of 108 months in prison on 26 August 2022. The sentencing judgment [R. Doc. 108] was entered on 1 September 2022. Defendant timely filed a notice of appeal two days *before* judgment was entered [R. Doc. 105]. All issues have been preserved for this Court's review, and its jurisdiction is invoked pursuant to 28 U.S.C. § 1291.

1

## STATEMENT OF THE ISSUES

1)     Whether the jury was properly instructed as to the elements of the offense.

       *Rehaif v. United States*, 139 S. Ct. 2191 (2019)

       18 U.S.C. § 921(a)(20)(B)

       *Beecham v. United States*, 511 U.S. 368 (1994)

2)     Whether 18 U.S.C. § 922(g)(1) violates the Second Amendment to the Constitution as applied to Defendant in this case.

       *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)

Appellate Case: 22-2870    Page: 7    Date Filed: 12/07/2022 Entry ID: 5224769

## STATEMENT OF THE CASE

After the filing of a criminal complaint on 22 February 2021, a federal grand jury issued an indictment three days later, charging Defendant with a single count of being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

The Honorable Donovan W. Frank presided over a trial to a jury spanning five trial days from 7 through 11 March 2022. The jury returned a verdict of guilty after receiving answers to its written questions to the court. At sentencing, on 26 August 2022, Judge Frank imposed a sentence of 108 months in prison, and later filed a written memorandum denying Defendant's post-verdict motion for dismissal on 13 September 2022. This appeal follows.

Most of the facts of the case were not in dispute. On 14 January 2021, at about 4:00 in the afternoon, police responded to a report of a shots fired incident in Brooklyn Center, Minnesota. Tr., Vol. II, at 47. They were informed that the suspect was Defendant Jackson, and that he was located near the 4100 block of Lyndale Avenue North in Minneapolis. Tr., Vol. II, at 49. Mr. Jackson was in a vehicle in the parking lot of an apartment building, parked near a snowbank, unaware that a crowd of police officers was watching and waiting for an order to seize him. After the order was given, several police vehicles quickly drove up, in attempt to box him in, and when Jackson moved his vehicle in reverse, both an unmarked police SUV and a marked squad car

3

slammed into Jackson's vehicle, one of which pushed it hard into the snowbank, immobilizing it, and rendering the driver's-side door inoperable. *Id*. at 60-63; 162.

Mr. Jackson unfastened his seat belt, moved over to the passenger's seat, exited the vehicle, removed his jacket, and attempted to run. He was quickly tackled, tazed, and taken into custody by the police. *Id*. at 63-66. A firearm, a few pills, a paper copy of Mr. Jackson's driver's license, some marijuana, and other personal items were found in the jacket he had left near the vehicle. *Id*. at 106-07, 153; Vol. III, at 366, 373.

At trial, Mr. Jackson testified that he was indeed in knowing possession of the firearm found in his jacket on 14 January 2021. Tr., Vol. III, at 335. He also testified that he previously had been convicted of two felony offenses for the sale of a few grams of cocaine. In August 2020, after he had served his time with the Minnesota Department of Corrections, his supervising probation officer met with him to deliver his discharge papers, and told him that his civil rights were restored and that he had returned to his status as a citizen. *Id*. at 330-31. Jackson testified that he thereafter sought to obtain his permit to carry a pistol, and identified himself in a video at the gun range where he signed up for the course required to obtain the permit. *Id*. at 332-34. He further testified that on the day that he was arrested he did not know he was a prohibited person, and did not know it was unlawful for him to possess the firearm. Tr., Vol. II, at 337.

Appellate Case: 22-2870     Page: 9     Date Filed: 12/07/2022 Entry ID: 5224769

In its rebuttal case, the Government introduced copies of the discharge papers received by Mr. Jackson. The document complied with (and was required by) Minnesota law. It was titled: "NOTICE OF SENTENCE EXPIRATION AND RESTORATION OF CIVIL RIGHTS." Gov't Ex. 34. The notice included a caveat stating that one cannot ship, transport, possess, or receive a firearm if one has been convicted of a "Crime of Violence under Minn. Statute § 624.712, subd. 5."

In short, the evidence at trial was sufficient to demonstrate that Mr. Jackson knowingly possessed a firearm on 14 January 2021, that he previously had been convicted of a felony drug offense, and that he believed at the time of the offense that he no longer was subject to the usual restrictions of being a felon because his civil rights had been restored, as was his status as a full citizen.

The district court supplemented these facts with an instruction to the jury explaining that under Minnesota law, even the simple sale of cocaine is classified as a "crime of violence," rendering Mr. Jackson's belief to be in error. It also instructed the jury that it could consider whether Mr. Jackson reasonably believed that his civil rights had been restored when deciding whether the Government had proved the third element of the offense – that at the time he possessed the pistol he knew he had been convicted of a crime punishable by imprisonment for more than one year.

The jury clearly struggled with the instructions, as demonstrated by its questions to the court, but the court declined to provide any further guidance in the form of

5

supplemental instructions. The jury eventually returned with a guilty verdict. This appeal follows.

## SUMMARY OF THE ARGUMENT

This appeal asserts that the district court erroneously instructed the jury as to the elements it was required to find to convict for a violation of § 922(g)(1).The model jury instructions do not provide guidance regarding how to instruct the jury in a case in which the Defendant asserts his belief that at the time he is alleged to have possessed a firearm he was no longer convicted of a felony because of a subsequent restoration of his civil rights, or an expungement, or a pardon – as federal law explicitly contemplates. The district court in this case abused its discretion by permitting the jury (through erroneous instructions) to find the required proof of knowledge of his status based solely on the historical fact of his previous conviction without regard for what he reasonably believed his status to be at the time of the offense.

We also contend that the statute as applied to Defendant Jackson is unconstitutional in violation of the Second Amendment.

## ARGUMENT

I.      Standards of Review.

This Court reviews a district court's formulation of jury instructions for abuse of discretion. *United States v. Asomani*, 7 F.4th 749, 751 (8th Cir. 2021).

This Court reviews challenges to a statute's constitutionality *de novo. United*

6

*States v. Billiot*, 785 F.3d 1266, 1269 (8th Cir. 2015).

II.    The District Court Improperly Instructed the Jury Regarding the Elements of Being a Felon in Possession of a Firearm under Section 922(g)(1).

In *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) . . ., the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id*. at 2200. In this case, the relevant category was any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

What constitutes a "conviction" under this provision, however, is subject to change, and one's status as a prohibited person therefore also is subject to change. One's status can change from prohibited person to non-prohibited person because the requisite "conviction" is statutorily defined by Congress to be determined by the law of the jurisdiction in which it arises – in this case, the State of Minnesota:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20)(B). Minnesota law, in turn, provides that,

7

> When a person has been deprived of civil rights by reason of conviction of a crime and is thereafter discharged, such discharge shall restore the person to all civil rights and to full citizenship, with full right to vote and hold office, the same as if such conviction had not taken place, and the order of discharge shall so provide.

Minn. Stat. § 609.165, subd. 1.

In this case, Mr. Jackson testified to receiving the notice of discharge from his probation officer that fully complied with this statute, and to his consequent understanding at the time he possessed the firearm that he was now a full citizen and no longer subject to the constraints of liberty arising from his previous felony conviction. The notice, of course, also complied with subdivision 1(a) of the same statute by informing him "a person who has been convicted of a crime of violence, as defined in section 624.712, subdivision 5, is not entitled to ship, transport, possess, or receive a firearm or ammunition for the remainder of the person's lifetime." Although Mr. Jackson never had been convicted of any crime having as an element the use, attempted use, or threatened use of physical force or violence, the referenced state statute's definition of a "crime of violence" is far broader, and includes any crime under the statutory chapter defining Minnesota drug crimes (however peaceably they may have been committed). Although Mr. Jackson's belief that he had been a "nonviolent felon" (*see* Tr., Vol. III, at 343) may have been reasonable, it was not technically accurate under state law.

8

The model jury instructions of this Court do not supply an apt instruction for felon-in-possession cases in which the defendant's status as a person convicted of a crime punishable by more than a year in prison is contested on the basis of an alleged restoration of civil rights – or in which the defendant's *knowledge* of such status is contested on the basis of his reasonable belief that his civil rights had been restored. As a consequence, the Parties and the court struggled with how to instruct the jury on this issue (*see* Tr., Vol. III, at 380-88, 394-400, 403-31; Vol. IV, 434-53, 491-505). After the first afternoon of these lengthy oral arguments, the district court promised some preliminary rulings: "I'll make a ruling later in the next hour, give -- nobody has to kind of stay here. We'll send you -- we can send you e-mail -- I can send you e-mails. Would that work for you? So -- and then you'll -- so you'll know in the next hour." Tr., Vol. III, at 430.

As promised, the court sent an email at the close of business, providing as follows:

> Consistent with the Court's proposed jury instructions, the Court finds that the question of whether the Defendant is a felon is a question of law, not fact, and that ignorance of the law is not a defense. Consistent with *Rehaif*, the Court notes the distinction that Justice Breyer makes between ignorance with respect to elements of the crime versus ignorance to the legal effect of a collateral matter. *Rehaif v. United States*, 139 S. Ct. 2191, 2198 (2019).
>
> However, the Court will allow argument that based upon the Defendant's reliance on the probation officer, the Defendant believed that he was no longer a convicted felon.

Chambers Email to Counsel (9 March 2022) (Addendum at 9).

The defense had specifically requested an instruction supplying the jury with the federal definition of what constitutes a "conviction":

> what we are asserting here is that we're entitled to the definition of what constitutes a conviction for this crime as set forth in the federal law, and the federal law specifically looks to state law for that definition. And it's right there in black and white. We're entitled to that in the instructions. So we will ask for that.

Tr., Vol. III, at 387-88. The court later asked for the specific language of the requested instruction to be made a part of the record, and counsel provided the text of the statute verbatim:

> THE COURT: . . . indicate what specifically you're asking the Court to do – to include in its instructions with respect to the definition of a felony in terms of the issue that we've been talking about here.
> MR. GERDTS: The – the exact quote. "What constitutes a conviction of such crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged or set aside or for which a person has been pardoned or has had civil rights restored, shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transfer, possess, or receive firearms."

Tr., Vol. IV, at 423-24. The court nonetheless rejected the request, consistent with its conclusion that Mr. Jackson's status as a felon "is a question of law, not fact."

The district court thus instructed the jury regarding the elements of the crime of being a felon in possession of a firearm as follows:

> Now, in order to sustain its burden of proof for the crime of possessing a firearm as charged in Count 1 of this Indictment, the Government must prove the following four essential elements beyond a reasonable doubt:

10

One, the defendant has previously been convicted of a crime punishable by imprisonment for more than one year.

Two, after that, the defendant knowingly possessed a firearm, that is, a Bersa Model Thunder nine-millimeter semi-automatic pistol.

Three, at the time that the defendant knowingly possessed the firearm, he knew he had been convicted of a crime punishable by imprisonment for more than one year.

And, four, the firearm was transported across the state line at some time during or before the defendant's possession of it.

Now, for you to find the defendant guilty of the crime charged under the Count 1 I have mentioned, the Government must prove all of these essential elements beyond a reasonable doubt, otherwise, you must find the defendant not guilty.

Tr., Vol. IV, at 560.

The court then further instructed the jury as to the meaning of the elements, including the following:

The first element of the charge in Count 1 requires the Government to prove that the defendant has previously been convicted of a crime punishable by imprisonment for more than one year. You are instructed that second-degree sale of drugs – sometimes designated drugs second degree, sales of three grams of more cocaine, heroin, meth within a 90-day period – is a crime punishable by imprisonment for more than one year under the laws of the State of Minnesota. You are further instructed that this is a crime of violence under which the State of Minnesota does not permit the full restoration of the defendant's civil rights insofar as he was not permitted to ship, transport, possess, or receive a firearm for the remainder of his lifetime.
. . . .
The third element of the crime charged in Count 1 requires the Government to prove that at the time the defendant knowingly possessed the firearm, he knew he had been convicted of a crime punishable by imprisonment for more than one year. For you to find that Element Number 3 is proved beyond a reasonable doubt, you must unanimously agree that the defendant knew he had been convicted of a crime punishable by imprisonment for more than one year at the time he knowingly possessed the firearm described in the Indictment. In making

11

that determination, you may consider whether the defendant reasonably believed that his civil rights had been restored, including the right to possess a firearm. If you do not all agree that the Government has proved this element beyond a reasonable doubt, then you must find the defendant not guilty of the offense of being a felon in possession of a firearm.

*Id*. at 561, 563.

The concern in this case was that without the appropriate instruction, the jury would be permitted to convict Defendant based on the mere historical fact of the previous conviction, and on his knowledge of that historical fact. Although the instructions permitted the jury "to consider" his belief that his civil rights were restored, it did not *require* them to do so, and therefore did not require them to determine whether he truly had the knowledge required by the third essential element of the offense.

The statutory definition of a "conviction" clearly permits a felon to become a *non*-felon if the conviction "has been expunged or set aside or for which a person has been pardoned or has had civil rights restored." This Court long ago recognized and discussed that possibility in *United States v. Edwards*, 946 F.2d 1347 (8th Cir. 1991), *abrogated on other grounds by Beecham v. United States*, 511 U.S. 368 (1994). But it was not until after *Rehaif* that the definition of a felony conviction became so essential in a case presenting the factual circumstances as in the trial below. And that is because the Government must prove beyond a reasonable doubt that Defendant *knew*, at the time that he possessed the firearm, that he was *still* a person previously "convicted" of

12

a crime punishable by more than a year in prison. By failing to inform the jury that such convictions are not necessarily permanent, the district court permitted the jury to base its verdict on the mere historical fact of the prior conviction, and on Defendant's knowledge of that historical fact, rather than on his belief at the time he possessed the firearm that that his civil rights had been fully restored and that he was no longer a felon.

The district court therefore abused its discretion in two ways. The first was its erroneous conclusion that "the question of whether the Defendant is a felon is a question of law, not fact." To the contrary, it is the first essential element of the crime, required to be found by the jury by proof beyond a reasonable doubt. The second error constituting an abuse of discretion was the district court's failure to require the jury to determine whether Defendant had the essential knowledge of his continued status as a convicted felon at the time of the offense. As noted by the Court in *Rehaif*, "[w]ithout knowledge of that status, the defendant may well lack the intent needed to make his behavior wrongful. His behavior may instead be an innocent mistake to which criminal sanctions normally do not attach." *Rehaif*, 139 S. Ct., at 2197.

After the case was argued and submitted, the district court still had the opportunity to correct the erroneous instructions because the jury submitted two questions to the court demonstrating that it was perplexed, and seeking clarification of the ambiguous instructions. "If the jury requests further instructions on the law

Appellate Case: 22-2870     Page: 18     Date Filed: 12/07/2022 Entry ID: 5224769

applicable to an important issue, the trial judge is required to provide the jury with such supplemental instructions as may be necessary to guide it in the determination of the issue. *Wegener v. Johnson*, 527 F.3d 687, 694 (8th Cir. 2008) (cleaned up). When confronted with the possibility that an "instruction is ambiguous and therefore subject to an erroneous interpretation, . . . the proper inquiry . . . is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). When a court responds "to a jury request for supplemental instructions," [i]t must insure that any supplemental instructions given are accurate, clear, neutral and non-prejudicial." *United States v. Jenkins*, 792 F.3d 931, 935 (8th Cir. 2015) (citing *United States v. Felici,* 54 F.3d 504, 507 (8th Cir.1995)). And,

> [d]ischarge of the jury's responsibility for drawing appropriate conclusions from the testimony depend[s] on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria. When a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy.

*States v. Wisecarver,* 598 F.3d 982, 989–90 (8th Cir. 2010).

The first jury question expressly sought clarification regarding the instructions that the court and the Parties had struggled over:

> Page 15, paragraph I Element #3
> We are seeking clarification on the sentence: (In making that determination, you <u>may</u> consider whether the defendant reasonably believed that his civil rights had been restored, including his rights to possess a firearm.)
> For clarity, do we have to consider this.

14

R. Doc. 68. The court's response was that "It is one issue that you may consider in evaluating whether the government has proven element #3 beyond a reasonable doubt." R. Doc. 70. Neither Party had any objection to the Court's response, Tr., Vol. IV, at 578-79, but both Parties *should* have objected to it, because as explained above, Defendant's reasonable belief as to whether his civil rights had been restored goes directly to the heart of the factual finding regarding his knowledge as required by *Rehaif* and the third essential element of the offense.

After the second question, however, it became clear that the jury was truly confused and needed guidance:

> Page 12, "Three" says "at the time the defendant knowingly possessed the firearm, he knew he had been convicted of a crime punishable by imprisonment for more than one year."
>
> Page 15 states the same, followed by "you may consider whether the defendant reasonably believed that his civil rights had been restored, including his right to possess a firearm."
>
> Page 16 clarifies that "the government is not required to prove that the defendant knew that his acts or omissions were unlawful. An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident."
>
> Question: Does the defendant believing that his civil rights had been restored, AND knowing that he had been convicted of a crime punishable by imprisonment for more than one year translate to having proven page 12 item 3 or not?

R. Doc. 69. It was clear from the question that the jury did not understand that Defendant's knowledge of his historical conviction, and his separate knowledge that

Appellate Case: 22-2870    Page: 20    Date Filed: 12/07/2022 Entry ID: 5224769

his civil rights later had been restored, provided exactly contradictory answers to the same question regarding knowledge of his status, and that Defendant's belief that his civil rights had been restored *negated* the knowledge required to prove the third element of the offense. At this point, noting the obvious error, Defense counsel asked for the Court to supply the jury with the only accurate answer to the question:

> Your Honor, I think we have inadvertently built error into the instructions because the question clearly indicates that – as the elements are set forth, and this is on what they referred to as page 12, it permits them to find him guilty merely by virtue of the historical fact of his conviction when what they have to find is that he knows he's still a felon. And that's what the request asks. I think the only answer to the question is no, unless you're going to give different instructions, which I don't think we want to do.

Tr., Vol. V., at 582. The court overruled the objection, and gave the instruction merely to follow the instructions as given. Tr., Vol.5, at 585-86; R. Doc. 71. That decision was in error, and the failure to supply the jury with an accurate, supplemental instruction to cure the jury's misdirection was an abuse of discretion. Defense counsel reiterated his objection to the failure to provide the appropriate clarification, *id*. at 586-87, and the jury returned with a guilty verdict approximately three hours later.

III. **The Statute Forbidding the Possession of a Firearm by a Felon Is Unconstitutional as Applied to Defendant Jackson.**

The charging statute, 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), is unconstitutional as applied to Defendant Jackson in violation of the Second

Appellate Case: 22-2870     Page: 21     Date Filed: 12/07/2022 Entry ID: 5224769

Amendment. The Second Amendment protects the right to possess and carry firearms: "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. After trial in the case below, the United States Supreme Court issued its landmark opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), in which the Court announced that the Second Amendment presumptively protects an individual's bearing of a firearm in public, and the Government may not constitutionally regulate such conduct unless the regulation "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127:

> we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id*. at 2126. The Court further explained that "Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Id*. at 2136. After conducting a rigorous review of that understanding at the time of the adoption of the Bill or Rights in 1791, the Court re-affirmed that "[t]he Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." *Id*. at 2156.

Merely having a felony record, however, was never among those reasonable,

well-defined restrictions in 1791. As observed by then *judge* Amy Coney Barrett in a well-known Seventh Circuit dissent,

> History is consistent with common sense: it demonstrates that legislatures have the power to prohibit dangerous people from possessing guns. But that power extends only to people who are dangerous. Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons. Nor have the parties introduced any evidence that founding-era legislatures imposed virtue-based restrictions on the right; such restrictions applied to civic rights like voting and jury service, not to individual rights like the right to possess a gun. In 1791—and for well more than a century afterward—legislatures disqualified categories of people from the right to bear arms only when they judged that doing so was necessary to protect the public safety.

*Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019), *abrogated by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *See also* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYOMING L. REV. 249, No. 2, Art. 7 (2020); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010) ("it appears to us that the historical data is not conclusive on the question of whether the founding era understanding was that the Second Amendment did not apply to felons"); C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 HARVARD JOURNAL OF LAW & PUBLIC POLICY 695 (Spring 2009).

Although this Court has addressed the facial validity of Section 922(g), *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011) ("it is well settled that Congress did not violate the Second Amendment . . . when enacting . . . § 922(g)"), it has not revisited the issue since the Supreme Court issued its decision in *Bruen*, and *Bruen* makes clear

18

that the statute *is* facially unconstitutional unless the Government can establish that the prohibition on possession of firearms by felons "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." As already discussed above, the historical tradition, as understood when the amendment was adopted in 1791, does *not* support a blanket ban on possession of firearms by the entire class of citizens with criminal convictions for crimes punishable by at least a year and a day in prison. Because the statute unquestionably burdens conduct protected by the Second Amendment, the statute therefore almost certainly is facially unconstitutional.

Defendant Jackson, however, here asserts only that the statute is unconstitutional as applied to him. This Court also has considered as-applied challenges to the law, and set forth a two-pronged test for such cases: "At a minimum, to succeed on an as-applied challenge, [a defendant] must establish (1) that the Second Amendment protects his particular conduct, and (2) that his prior felony conviction is insufficient to justify the challenged regulation of Second Amendment rights." *United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019). That two-pronged requirement, however, directly conflicts with the new holding of *Bruen*, that "the Constitution *presumptively* protects" conduct that is covered by the "plain text" of the Second Amendment. The burden does not fall on the citizen to explain why his status is insufficient to justify a regulation that dispenses with the presumptive protection.

Here, the plain text of the amendment plainly covers Defendant Jackson's

Appellate Case: 22-2870     Page: 24     Date Filed: 12/07/2022 Entry ID: 5224769

conduct – he was "bearing" a commonly used firearm for his protection. The plain text does not distinguish between open or concealed carrying or between bearing while walking or driving in an automobile. The concealed bearing of the firearm in Jackson's jacket while he was sitting peaceably in an automobile in a private parking lot is, after *Bruen*, indisputably conduct that is presumptively protected by the constitution. Mr. Jackson's non-violent adult criminal history of drug possession and sales certainly does not render him sufficiently "dangerous" to justify the prohibition of such conduct by § 922(g)(1).

Other cases from this Circuit have reviewed as-applied challenges based on whether the challenger has presented "facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. . . . for example, that his stipulated prior felony conviction was for a non-violent offense or that he is no more dangerous than a typical law-abiding citizen." *United States v. Woolsey*, 759 F.3d 905, 909 (8th Cir. 2014) (cleaned up). In Woolsey's case, his aggravated assault and resisting arrest convictions foreclosed that argument, but Mr. Jackson's non-violent criminal history for possession and attempted sales of cocaine were all non-violent offenses that certainly do not render him any more dangerous than the typical law-abiding citizen.

The district court disagreed, concluding that "those who commit *serious* crimes—whether violent or nonviolent—forfeit their right to possess firearms." Order

20

Denying Motion to Dismiss [R. Doc. 114] at 7. The district court rather summarily arrived at its conclusion, however, choosing not to conduct the kind of historical analysis suggested by other courts. *See, e.g, United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2022 WL 16649175, at *1 (S.D. Miss. Oct. 27, 2022) (ordering the parties to brief the court on the necessity of a historical consultant). As noted by Bullock, courts already have struck down a variety of firearms regulations since *Bruen*. *Id*. at *1 n.1("*See, e.g.*, *United States v. Price*, No. 2:22-CR-97, 2022 WL 6968457 (S.D.W. Va. Oct. 12, 2022) (finding unconstitutional 18 U.S.C. § 922(k), which prohibits possession of a firearm with an altered, obliterated, or removed serial number); *Antonyuk v. Hochul*, No. 1:22-CV-986-GTS-CFH, 2022 WL 5239895 (N.D.N.Y. Oct. 6, 2022) (granting in part and denying in part temporary restraining order concerning several New York state firearm restrictions); *United States v. Quiroz*, No. PE:22-CR-104-DC, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022) (finding unconstitutional 18 U.S.C. § 922(n), which prohibits persons under felony indictment from obtaining a firearm)."). By the time a panel of this Court takes the matter under advisement, there no doubt will be many more published opinions touching on the issue throughout the country.

## CONCLUSION

Based on all of the foregoing, Defendant respectfully asks the Court to reverse and vacate his conviction, and to remand if required, for the relief warranted.

Dated: 6 December 2022

Respectfully submitted,

*/s Daniel L. Gerdts*

_____
Daniel L. Gerdts (#207329)
331 Second Avenue South, Suite 705
Minneapolis, Minnesota 55401
612.800.5086

Attorney for Appellant

Appellate Case: 22-2870   Page: 27   Date Filed: 12/07/2022 Entry ID: 5224769

# CERTIFICATE OF COMPLIANCE

No. 22-2870

This brief complies with the type-volume limits of the Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the document contains 5516 words.

The brief complies with the type-face requirements of Federal Rules of Appellate Procedure because this document has been prepared in a proportionally spaced typeface using Word 2021 software in 14-point, Times New Roman style.

Dated:  6 December 2022        *s/  Daniel L. Gerdts*

_____

Daniel L. Gerdts

Appellate Case: 22-2870    Page: 28    Date Filed: 12/07/2022 Entry ID: 5224769

## CERTIFICATE OF SERVICE

### No. 22-2870

Daniel L. Gerdts, a member in good standing of the bar of this Court, and hereinafter subscribed, states and affirms the following:

On the 6th day of December 2022, he served, or caused to be served, Appellant's Brief and Appellant's Addendum on opposing counsel Thomas Calhoun-Lopez, AUSA, and Angela M. Munoz, AUSA, who are registered CM/ECF users and who will be served by the CM/ECF system by virtue of my having filed said document electronically.

Dated: 6 December 2022                 s/ *Daniel L. Gerdts*

                                       _____

                                       Daniel L. Gerdts