In The
United States Court of Appeals
For the Eighth Circuit

_____

No. 22-2870
_____

United States of America,

Appellee,

vs.

Edell Jackson,

Appellant.

_____

Appeal from the United States District Court
For the District of Minnesota
The Honorable Donovan W. Frank, Senior District Court Judge, Presiding
_____

**APPELLANT'S PETITION FOR REHEARING EN BANC**
_____

Daniel L. Gerdts
331 Second Avenue South, Suite 705
Minneapolis, MN 55401
612 800 5086

Attorney for Appellant
Edell Jackson

# STATEMENT PURSUANT TO RULE 35(b)(1)

The panel decision in this case conflicts with a decision of the United States Supreme Court, requiring consideration of the full court to rectify the conflict. In particular, the panel's decision conflicts with the Supreme Court's opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). It also conflicts with previous cases from this Circuit, notably *United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023), and *en banc* consideration therefore is necessary to secure or maintain uniformity of this Court's own decisions.

Perhaps most notable, though, is that this proceeding also involves a question of exceptional importance because the panel opinion directly conflicts with the authoritative decision on the same precise issue by the United States Court of Appeals for the Third Circuit. Specifically, in *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) (*en banc*), the Third Circuit concluded that 18 U.S.C. § 922(g)(1)'s prohibition on the possession of firearms by a person convicted of a felony offense was unconstitutional as applied in that case to someone convicted only of a nonviolent felony offense. The panel opinion in this case concluded exactly to the contrary.

TABLE OF CONTENTS

**STATEMENT PURSUANT TO RULE 35(B)(1)** ................................................... I

**TABLE OF AUTHORITIES** ........................................................................... III

**ARGUMENT IN SUPPORT OF REHEARING EN BANC** .............................. 1

    I.    THE PANEL OPINION CONFLICTS WITH THE THIRD CIRCUIT'S EN BANC DECISION IN *RANGE*, AND CONFLICTS WITH THE SUPREME COURT'S DECISION IN *BRUEN*. .......... 2

    II.    THE PANEL OPINION CORRECTLY DISPENSED WITH AN ANALYSIS OF THE SCOPE OF THE SECOND AMENDMENT RIGHT, BUT CONFLICTS WITH THIS COURT'S PRIOR PRECEDENT THAT REQUIRES SUCH AN ANALYSIS ...................................................... 5

**CONCLUSION** ................................................................................................ 9

**CERTIFICATE OF COMPLIANCE** ............................................................. 10

**CERTIFICATE OF SERVICE** ....................................................................... 11

TABLE OF AUTHORITIES

**CASES**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .......................................... 1, 7, 8

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), *abrogated by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ................................................... 5

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) .. passim

*Range v. Att'y Gen. United States of Am.*, 69 F.4th 96
 (3d Cir. 2023) (*en banc*) ................................................................ i, 2, 3, 4

*Range v. Att'y Gen. United States*, 53 F.4th 262 (3d Cir. 2022), *reh'g en banc granted, opinion vacated sub nom. Range v. Att'y Gen. United States of Am.*, 56 F.4th 992 (3d Cir. 2023), and *on reh'g en banc sub nom. Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) .................................................. 7

*United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309 (S.D. Miss. June 28, 2023) ............................................................................................ 7

*United States v. Flores*, 663 F.3d 1022 (8th Cir. 2011) ...................................... 5, 6, 7

*United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) ............................................. 3

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023) .................................................................. 9

*United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023) ............................... i, 5, 6, 7

**OTHER AUTHORITIES**

18 U.S.C. § 922(g)(1) ........................................................................................ i, 1, 3, 4, 5

U.S. Const. amend. I ..................................................................................................... 8

U.S. Const. amend. II .................................................................................................... 1

U.S. Const. amend. IV .................................................................................................. 8

ARGUMENT IN SUPPORT OF REHEARING EN BANC

The Second Amendment protects the right to possess and carry firearms: "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. AMEND. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment "confer[s] an individual right to keep and bear arms." *Id*. at 595. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Court reaffirmed that holding and clarified that the *only* way that laws can constitutionally restrict the exercise of that right is if they are shown to be "consistent with this Nation's historical tradition of firearm regulation." *Id*., 142 S. Ct. at 2126. The law at issue in this case makes it

> unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

Edell Jackson was charged with and convicted of that crime after a trial in federal district court in Minnesota. He had served time in the custody of the Minnesota Department of Corrections after his previous convictions for the street-level sales of a few grams of cocaine. At the time of his arrest in this case, he knowingly possessed a pistol. He believed he had been relieved of his status as a felon, and returned to full

1

citizenship, after completion of his prison sentence and upon discharge from all required supervision. His belief was based on his discharge paperwork that included a notice informing him of the restoration of his civil rights. That notice included a caveat that the right to possess a firearm was not restored for persons who had been convicted of "crimes of violence." Because his cocaine sales did not involve violence, he understood the restoration of his civil rights to be complete. He was mistaken, however, because the Minnesota statute defining crimes of violence includes virtually all felony drug offenses regardless how they might be committed.

I. The Panel Opinion Conflicts with the Third Circuit's En Banc Decision in *Range*, and Conflicts with the Supreme Court's Decision in *Bruen*.

Only days after the panel issued its opinion in this case, the full Third Circuit Court of Appeals published its decision in *Range*, overturning the holding of the vacated panel opinion upon which the panel of this Court so heavily relied. *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) (*en banc*). That decision first rejected the Government's contention that the scope of the Second Amendment right did not extend to Mr. Range: "we reject the Government's contention that only 'law-abiding, responsible citizens' are counted among 'the people' protected by the Second Amendment." *Id.* at 103. As discussed below, this panel's opinion did not conduct that analysis, so no clear conflict arises from the Third Circuit's holding on that issue.

Appellate Case: 22-2870　　Page: 6　　Date Filed: 07/14/2023 Entry ID: 5295961

The decisions directly conflict, however, when reaching the second part of *Bruen's* required analysis. Quoting *Bruen*, the *Range* opinion continued: "To preclude Range from possessing firearms, the Government must show that § 922(g)(1), as applied to him, 'is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id*. To establish that historical tradition in this case, the panel relied almost exclusively on the findings of the vacated Third Circuit panel:

> the Third Circuit panel in *Range* concluded that legislatures traditionally possessed discretion to disqualify categories of people from possessing firearms to address a threat purportedly posed by these people 'to an orderly society and compliance with its legal norms,' not merely to address a person's demonstrated propensity for violence.

*United States v. Jackson*, 69 F.4th 495, 503 (8th Cir. 2023).

The *en banc* Third Circuit firmly rejected that reasoning without hesitation: "That Founding-era governments disarmed groups they distrusted like Loyalists, Native Americans, Quakers, Catholics, and Blacks does nothing to prove that Range is part of a similar group today." *Range*, at 105. Leaving aside for the moment that disqualification of similar groups today would obviously violate other constitutional guarantees, if Congress or the various state legislatures were constitutionally permitted to define *any* random category of people as not deserving of Second Amendment protections simply because it perceived the group to be a political threat, the Amendment would be rendered hollow and the analysis would revert to a means-ends analysis expressly rejected by *Bruen*: "To justify its regulation, the government may

3

not simply posit that the regulation promotes an important interest." *Bruen*, 142 S. Ct. at 2126.

Apart from a brief discussion of the history of § 922(g)(1), the panel opinion in this case provides no further basis for finding the challenged statute to be constitutional as applied to Mr. Jackson: "In sum, we conclude that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms." *Jackson*, at 505. Holding the statute to be constitutional as applied to Jackson based on that conclusion directly conflicts with the Third Circuit's holding in *Range*.

The holding also conflicts with *Bruen* for the same reason. *Bruen* requires that a challenged regulation comport with the Nation's historical tradition of firearm regulation. The panel's conclusion that the historical tradition included "status-based" prohibitions does not meet *Bruen's* requirement that the challenged regulation and the historical analogues be "relevantly similar." *Bruen*, 142 S. Ct. at 2132. As noted in *Range*, simply because there were historical analogues prohibiting Blacks and Catholics from possession of firearms, it does not follow that prohibiting felons therefore comports with the historical tradition.

*Bruen* provided some guidance in observing that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence

4

Appellate Case: 22-2870     Page: 8     Date Filed: 07/14/2023 Entry ID: 5295961

that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131. But there have always been felons, and "[f]ounding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting), *abrogated by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The panel opinion's holding that § 922(g)(1) is constitutional as applied to Jackson based on nothing more than a conclusion that generic status-based prohibitions were part of the Nation's historical tradition therefore also directly conflicts with *Bruen*.

II. The Panel Opinion Correctly Dispensed with an Analysis of the Scope of the Second Amendment Right, but Conflicts with this Court's Prior Precedent that Requires Such an Analysis.

This Court has traditionally (at least before the panel opinion in this case) focused not on the Nation's historical tradition of firearms regulation, but instead on "the scope of the right" approach, contending that

> *Bruen* does not command us to consider only "conduct" in isolation and simply assume that a regulated person is part of "the people." To the contrary, *Bruen* tells us to begin with a threshold question: whether the person's conduct is "covered by" the Second Amendment's "plain text." *See* 142 S. Ct. at 2129-30. And in [*United States v.*] *Flores*[, 663 F.3d 1022 (8th Cir. 2011)], we did exactly that when we determined that the plain text of the Amendment does not cover *any* conduct by unlawfully present aliens. . . . Thus, just as *Bruen* does not cast doubt on *Flores*'s interpretation of "the people," neither does it disavow *Flores*'s "scope of the right" approach.

*United States v. Sitladeen*, 64 F.4th 978, 987 (8th Cir. 2023). The *Sitladeen* opinion nonetheless also recognized the criticism of the approach: "other courts both before

5

and after *Bruen* have criticized *Flores*'s so-called 'scope of the right' approach, insisting that a textual analysis of 'the people' is not the right starting point when deciding whether a firearm regulation violates the Second Amendment." *Sitladeen*, at 986.

The *Sitladeen* opinion acknowledged that "*Flores*'s textual interpretation may or may not be correct." *Id*. at 987. But it concluded that it was bound by its precedent, and that "until the Supreme Court or our *en banc* court determines otherwise, the law of our circuit" first requires an analysis whether the person affected by a firearm prohibition "is part of 'the people' to whom the protections of the Second Amendment extend." *Sitladeen*, at 987. This case presents the opportunity for the *en banc* court to clarify whether the *Jackson* panel erred – and therefore muddied the requirements of this Court's precedent – by not adhering to that approach at all; but it also presents the full Court with the opportunity to reconsider the holding of *Sitladeen* and *Flores*.

What is clear is that the panel opinion in this case carefully avoided a scope-of-the-right analysis, choosing instead to jump to the second part of the *Bruen* analysis and rest its decision on the already vacated conclusion of the Third Circuit's *Range* panel that the disarmament of status-based categories of people fits comfortably within the Nation's historical tradition of firearms regulation. Nowhere in the panel opinion

6

does it cite to or even acknowledge *Sitladeen* or *Flores*, or make any reference at all to the scope-of-the-right approach.[1]

The scope-of-the-right analysis adopted by previous panels of this Court, and passed over by the panel opinion in this case is, of course, more than a little stilted and artificial. The panel was correct to avoid it. In the words of Judge Reeves from the opinion released just two weeks ago in *United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309 (S.D. Miss. June 28, 2023), "*Bruen* step one requires us to look at the 'conduct' being regulated, not the status of the person performing the conduct." *Id*. at *20. The panel's decision to forego a discussion of the scope of the right – usually framed by other courts as an analysis of the meaning of the words "the people" in the Second Amendment – better comports with the Supreme Court precedent. The full Court should grant review to make clear that it is the correct approach.

Indeed, there is *nothing* in *Heller* or *Bruen* that supports this Court's previous focus on a person's "status" as opposed to her "conduct." *Bruen* was explicit:

---

[1] This is particularly noteworthy considering its heavy reliance on the panel opinion in *Range* and that panel's own conclusion based on a scope-of-the-right analysis that "[t]hose whose criminal records evince disrespect for the law are outside the community of law-abiding citizens entitled to keep and bear arms." *Range v. Att'y Gen. United States*, 53 F.4th 262, 273 (3d Cir. 2022), *reh'g en banc granted, opinion vacated sub nom. Range v. Att'y Gen. United States of Am.*, 56 F.4th 992 (3d Cir. 2023), and *on reh'g en banc sub nom. Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023).

7

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's *conduct*, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Bruen*, 142 S. Ct. at 2129–30 (cleaned up and emphasis added). *Heller* was particularly clear that there is no principled basis to distinguish the meaning of "the people" in the Second Amendment from the meaning of "the people" as used in the First Amendment ("the right of *the people* peaceably to assemble, and to petition the Government for a redress of grievances"), U.S. CONST. AMEND. I (emphasis added), and in the Fourth Amendment ("The right of *the people* to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated"). U.S. CONST. AMEND. IV (emphasis added). "[T]he term unambiguously refers to all members of the political community, not an unspecified subset. *Heller*, 554 U.S. at 580. The Court reiterated the point, declaring that "[w]e start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to *all Americans*." *Id*. at 581 (emphasis added).

This Court certainly is not prepared to find that persons convicted of crimes punishable by more than a year in prison may constitutionally be prohibited from peaceable assembly or from asserting the protections of the Fourth Amendment against unreasonable searches and seizures. There is no better justification for carving out a

8

special exemption for the possession of firearms and ammunition – unless an established historical tradition of such prohibitions existed at the time of the adoption of the Second Amendment.

## CONCLUSION

Based on all of the foregoing, the Court should accept the matter for rehearing *en banc*.[2]

Dated: 14 July 2023　　　　　　　　　Respectfully submitted,

*/s Daniel L. Gerdts*

_____
Daniel L. Gerdts (#207329)
331 Second Avenue South, Suite 705
Minneapolis, Minnesota 55401
612.800.5086

Attorney for Appellant

---

[2]It will not be lost on this Court that the Supreme Court just accepted review of the Fifth Circuit's opinion in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023). That case found a different subdivision of § 922(g) facially unconstitutional. The question accepted for review: "Whether 18 U.S.C. 922(g)(8), which prohibits the possession of firearms by persons subject to domestic violence restraining orders, violates the Second Amendment on its face." Petition for Cert., 2023 WL 2600091, at *2.

　　That case concerned an individual subject to a civil restraining order who was involved in five shootings in and around Arlington, Texas, in less than two months. *See Rahimi*, 61 F.4th at 448–49. While it might provide the Court with the opportunity to provide further guidance on how to evaluate firearms regulations, it certainly will not answer the questions raised here nor resolve the split of authority between this Court and the Third Circuit inasmuch as it was a facial challenge, to a different statutory subdivision, arising out of a civil injunction, and involving a concededly very violent individual. It is more likely that this Court's *en banc* decision will inform the Court in *Rahimi*.

9

# CERTIFICATE OF COMPLIANCE

## No. 22-2870

This document complies with the type-volume limits of Federal Rule of Appellate Procedure 35(b)(2)(A) because the body of the document contains fewer than 3900 words – the entire document is only 2995 words.

This document complies with the type-face and style requirements of the Federal Rules of Appellate Procedure because this document has been prepared in a proportionally spaced typeface using Word 2021 software in 14-point, Times New Roman style.

Dated: 14 July 2023                s/ *Daniel L. Gerdts*
                                   _____
                                   Daniel L. Gerdts

# CERTIFICATE OF SERVICE

## No. 22-2870

Daniel L. Gerdts, a member in good standing of the bar of this Court, and hereinafter subscribed, states and affirms the following:

On the 14th day of July 2023, he served, or caused to be served, Appellant's Petition for Rehearing En Banc on opposing counsel David M. Genrich, AUSA, who is a registered CM/ECF user and who will be served by the CM/ECF system by virtue of my having filed said document electronically.

Dated: 14 July 2023           s/ *Daniel L. Gerdts*

                                                   _____
                                                   Daniel L. Gerdts