No. 22-2870

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

UNITED STATES OF AMERICA,
Respondent-Appellee,

v.

EDELL JACKSON,
Petitioner-Appellant
_____

On Appeal from the United States District Court
for the District of Minnesota, No. 21-cr-51-DWF/TNL
(The Honorable Donovan W. Frank, United States District Judge)
_____

UNITED STATES' RESPONSE TO
PETITION FOR REHEARING EN BANC
_____

ANDREW M. LUGER
United States Attorney

LISA KIRKPATRICK
Appellate Chief
DAVID M. GENRICH
Assistant United States Attorney
United States Attorney's Office
District of Minnesota

KENNETH A. POLITE, JR.
Assistant Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

MAHOGANE D. REED
Attorney, Appellate Section
Criminal Division
United States Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 615-1170
mahogane.reed@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................i

TABLE OF AUTHORITIES ...........................................................ii

INTRODUCTION ...................................................................... 1

BACKGROUND ......................................................................... 1

REASONS FOR DENYING THE PETITION ............................. 5

    I.    The panel opinion faithfully applied *Bruen*. .................................6

    II.    The conflict between the panel opinion and the Third Circuit's reasoning in *Range* does not warrant en banc review. .................................................................... 11

    III.    Rehearing is not warranted based on this Court's recent decision in *Sitladeen*................................................. 16

CONCLUSION........................................................................ 18

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

Appellate Case: 22-2870    Page: 2    Date Filed: 07/27/2023 Entry ID: 5300346

# TABLE OF AUTHORITIES

**Cases**

*Atkinson v. Garland*,
70 F.4th 1018 (7th Cir. 2023) ................................................................. 13

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ......................................................................... 3, 8

*Folajtar v. Att'y Gen.*,
980 F.3d 897 (3d Cir. 2020).................................................................. 15

*Hamilton v. Pallozzi*,
848 F.3d 614 (4th Cir. 2017) ................................................................ 13

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) ............................................................. 13

*Medina v. Whitaker*,
913 F.3d 152 (D.C. Cir. 2019)............................................................... 13

*New York State Rifle & Pistol Ass'n v. Bruen*,
142 S. Ct. 2111 (2022)..................................................................*passim*

*Pearson v. Callahan*,
555 U.S. 223 (2009) .......................................................................... 17

*Range v. Att'y Gen.*,
53 F.4th 262 (3d Cir. 2022) (per curiam), *vacated*,
69 F.4th 96 (3d Cir. 2023) ..................................................................... 9

*Range v. Att'y Gen.*,
69 F.4th 96 (3d Cir. 2023) (en banc) .................................................*passim*

*United States v. Bullock*,
--- F. Supp. 3d ---, No. 3:18-cr-165, 2023 WL 4232309 (S.D. Miss.
June 28, 2023) ................................................................................ 14

*United States v. Jackson*,
69 F.4th 495 (8th Cir. 2023) ...........................................................*passim*

Appellate Case: 22-2870     Page: 3     Date Filed: 07/27/2023 Entry ID: 5300346

*United States v. Jordan*,
No. 1:23-cr-159, 2023 WL 4267602 (N.D. Ohio June 29, 2023) .............. 14

*United States v. Kearney*,
No. 4:23-cr-29, 2023 WL 3940106 (E.D. Va. June 9, 2023) ..................... 14

*United States v. Keels*,
No. 23-cr-20085, 2023 WL 4303567 (E.D. Mich. June 30, 2023) ............. 14

*United States v. McCane*,
573 F.3d 1037 (10th Cir. 2009) ................................................................ 13

*United States v. Rozier*,
598 F.3d 768 (11th Cir. 2010) .................................................................. 13

*United States v. Scroggins*,
599 F.3d 433 (5th Cir. 2010) .................................................................... 13

*United States v. Sitladeen*,
64 F.4th 978, *reh'g denied*, 2023 WL 3330794 (8th Cir. 2023) ............... 1, 16

## Statutes

18 U.S.C. § 922(g)(1) ......................................................................................... 1, 2

18 U.S.C. §922(g)(5)(A) ..………………………………………………... 15

Appellate Case: 22-2870     Page: 4     Date Filed: 07/27/2023 Entry ID: 5300346

## INTRODUCTION

The panel correctly held that 18 U.S.C. § 922(g)(1), the federal felon-dispossession statute, is constitutional as applied to petitioner-appellant Edell Jackson, whose multiple prior felony convictions—including for drug trafficking—disqualify him from possessing a firearm. The panel opinion faithfully applied the text-and-history analysis required by *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), to reach its conclusion. Although Jackson argues that the panel decision conflicts with *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc), the panel opinion is correct and is consistent with the overwhelming weight of pre- and post-*Bruen* precedent, and the Third Circuit would not necessarily reach a different result on the facts of this case. Finally, this Court should not grant rehearing to reconsider *United States v. Sitladeen*, 64 F.4th 978, *reh'g denied*, 2023 WL 3330794 (8th Cir. 2023). This case involves a different provision of Section 922(g) than *Sitladeen*, and the two cases do not conflict. Jackson's rehearing petition should be denied.

## BACKGROUND

1.     In January 2021, police officers responded to a report of domestic assault involving "shots fired" at an apartment complex in Brooklyn Center, Minnesota. R. Doc. 90 (PSR ¶ 6); *United States v. Jackson*, 69 F.4th 495, 498 (8th Cir. 2023). A.W., Jackson's girlfriend, reported that Jackson had punched and

1

kicked her multiple times on the head, face, and torso before firing a gun at her and leaving the scene. PSR ¶ 6. The officers observed visible injuries on A.W.'s face and arms. *Id*. ¶ 7.

After officers located Jackson in the apartment complex's parking lot and boxed in his car, he fled on foot, shedding his jacket as he ran. PSR ¶ 8; *Jackson*, 69 F.4th at 498. The officers caught Jackson, arrested him, and retrieved his discarded jacket; they found a Bersa Thunder 9mm semi-automatic pistol in his jacket pocket. PSR ¶¶ 8-9.

At the time of his arrest, Jackson had two Minnesota state felony convictions for drug trafficking: one in 2011, for which Jackson was sentenced to 78 months of imprisonment, and one in 2012, for which Jackson was sentenced to 144 months of imprisonment. PSR ¶¶ 44, 46; *see also Jackson*, 69 F.4th at 498. Jackson also had nine additional prior felony convictions, including an Illinois state conviction for possessing a firearm as a felon and multiple Illinois state drug-possession and drug-trafficking convictions. PSR ¶¶ 33, 38-43.

2.    A federal grand jury indicted Jackson for violating 18 U.S.C. § 922(g)(1), which makes it "unlawful for any person who has been convicted . . . of[] a crime punishable by imprisonment for a term exceeding one year"

2

knowingly to possess a firearm.[1] R. Doc. 6. After a four-day trial, a jury convicted Jackson. R. Doc. 67.

Before sentencing, the Supreme Court decided *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which "reiterate[d]" the "standard for applying the Second Amendment," *id*. at 2129. The Court explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 2129-30. When a regulation burdens presumptively protected conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130.

Jackson moved to dismiss his indictment based on *Bruen*, arguing that Section 922(g)(1) violated the Second Amendment on its face and as applied to him. R. Doc. 100. The district court denied Jackson's motion. R. Doc. 114. Citing the Supreme Court's repeated assurances in *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26, 635 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion), that its decisions do not "cast doubt on longstanding prohibitions on the possession of firearms by felons," the district court concluded that Section 922(g)(1) was facially constitutional. R. Doc. 114

---

[1] Jackson asserts that he "believed he had been relieved of his status as a felon," Pet. 1, but the jury rejected that argument when it convicted him of the offense. *See Jackson*, 69 F.4th at 499-501.

Appellate Case: 22-2870     Page: 7     Date Filed: 07/27/2023 Entry ID: 5300346

at 2-3 (quotations omitted). And it rejected Jackson's as-applied challenge on the basis that "Jackson has proven himself to be both dangerous and unable to abide by the law." *Id.* at 6.

3.    On appeal, Jackson renewed his argument that Section 922(g)(1) was unconstitutional as applied to him, positing that because his drug offenses were "non-violent," they did not render him "more dangerous than the typical law-abiding citizen." *Jackson*, 69 F.4th at 501. A panel of this Court disagreed, concluding that Section 922(g)(1) "is not unconstitutional as applied to Jackson based on his particular felony convictions." *Id.* The panel emphasized the Supreme Court's repeated assurances that "longstanding prohibitions on the possession of firearms by felons" remain intact. *Id.* at 501-02 (quotations omitted). Those assurances, together with "the history that supports them," confirm that there is "no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Id.* at 502. The panel observed that "[h]istory shows that the right to keep and bear arms was subject to restrictions that included prohibitions on possession by certain groups of people." *Id.* In the panel's view, there were "two schools of thought on the basis for these regulations": one that found a historical tradition of disarming those who are "unwilling to obey the government and its laws, whether or not they had demonstrated a propensity for violence," and the other that found a historical

4

tradition of disarming those who are deemed "more dangerous than a typical law-abiding citizen." *Id*. at 502 (quotations omitted). The panel noted that "there is considerable support in the historical record" for the law-abiding view of the historical record. *Id*. at 504. But the panel did not explicitly embrace either view because, after surveying common law, colonial statutes, and Founding-era sources, *see id*. at 502-05, the panel concluded that "either reading supports the constitutionality of § 922(g)(1) as applied to Jackson." *Id*. at 502; *see also id*. at 505-06 (concluding that Section 922(g)(1) is constitutional as applied to Jackson).

Chief Judge Smith concurred, "agree[ing] that § 922(g)(1) is not unconstitutional as applied to Jackson and that *Heller* remains the relevant precedent" this Court is "bound to apply." *Jackson*, 69 F.4th at 506.

## REASONS FOR DENYING THE PETITION

The panel opinion faithfully applied *Bruen*'s text-and-history framework by surveying the historical record and chronicling the analogous historical precursors to Section 922(g)(1). The conflict between the panel opinion and the Third Circuit's reasoning in *Range* does not warrant en banc review here. The panel opinion is correct and accords with the overwhelming weight of authority, and the Third Circuit would not necessarily reach a different result in this case.

5

Finally, Jackson's attempt to manufacture a conflict with this Court's decision in *Sitladeen* is unavailing. The petition should be denied.

## I.   The panel opinion faithfully applied *Bruen*.

Jackson's assertion (Pet. 4-5) that the panel opinion incorrectly undertook *Bruen*'s historical inquiry lacks merit.[2] *Bruen* explained that in determining whether a modern regulation is supported by history, the inquiry "will often involve reasoning by analogy." *Bruen*, 142 S. Ct. at 2132-33. But, the Court cautioned, "analogical reasoning under the Second Amendment" is not a "regulatory straightjacket": it "requires only that the government identify a well-established representative historical *analogue*, not a historical *twin*." *Id.* at 2133 (emphasis in original). Thus, in undertaking *Bruen*'s historical inquiry, courts need not mine the historical record for a "dead ringer." *Id.* The government need only demonstrate, and courts need only conclude, that a regulation is "analogous enough" to illustrative historical precursors. *Id.* at 2133-34.

The panel opinion properly applied this standard to conclude that historical laws disarming those who have demonstrated disrespect for legal norms or who pose a risk of danger to the public are sufficiently analogous to Section 922(g)(1). *Jackson*, 69 F.4th at 502-05. The panel opinion recognized that

---

[2] The government preserves the argument that the plain text of the Second Amendment does not extend to Jackson because he is not one of "the people" whom the Amendment protects. *See* Gov't Br. at 46-49.

Appellate Case: 22-2870    Page: 10    Date Filed: 07/27/2023 Entry ID: 5300346

restrictions on the possession of firearms by distrusted groups have a long pedigree, dating back to "England in the late 1600s, when the government disarmed non-Anglican Protestants who refused to participate in the Church of England"; continuing "[i]n colonial America," when "legislatures prohibited Native Americans from owning firearms" and "prohibited possession of firearms by people who refused to declare an oath of loyalty"; and persisting in the early States, which "authorized punishments that subsumed disarmament—death or forfeiture of a perpetrator's estate—for non-violent offenses involving deceit and wrongful taking of property." *Id.* at 502-03; *see also* Gov't Br. at 46-62. The panel concluded that there is thus "considerable support in the historical record" for the view that "legislatures traditionally possessed discretion to disqualify categories of people from possessing firearms to address a threat purportedly posed by these people to an orderly society and compliance with its legal norms." *Jackson*, 69 F.4th at 503 (quotations omitted).

The panel also properly opined that even "if dangerousness is considered the traditional *sine qua non* for dispossession, then history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons." *Jackson*, 69 F.4th at 504. As the panel explained, "[l]egislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an

7

unacceptable risk of danger if armed." *Id.* These historical laws, which imposed severe consequences on the commission of a felony and authorized legislatures to disarm untrustworthy and dangerous persons, provide historical justification for Section 922(g)(1). *See Bruen*, 142 S. Ct. at 2132.

The panel opinion's conclusion also accords with the Supreme Court's repeated assurances that the Second Amendment extends to "law-abiding, responsible citizens," *Heller*, 554 U.S. at 635, and that none of the Court's opinions "should be taken to cast doubt" on certain "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons," *id* at 626-27 & n.26. Indeed, in *Bruen*, six Justices reiterated that certain firearms regulations, including prohibitions on the possession of firearms by felons, are constitutional. *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring); *id*. 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring); *id*. at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting). The panel opinion properly reflects that these assurances are consistent with the underlying historical record. *Jackson*, 69 F.4th at 501; *see also id*. at 506 (Smith, C.J., concurring).

Even so, Jackson contends (Pet. 4) that the panel opinion "does not meet *Bruen*'s requirement that the challenged regulation and the historical analogues

Appellate Case: 22-2870    Page: 12    Date Filed: 07/27/2023 Entry ID: 5300346

be 'relevantly similar.'"[3] In effect, Jackson argues that *Bruen* requires a closer resemblance between the challenged regulation and historical analogues. But as just explained, *Bruen* only requires that historical laws be "analogous enough" to modern regulations. 142 S. Ct. at 2133.

Regardless, the historical analogues described in the panel opinion are "relevantly similar" to Section 922(g)(1). *Bruen* did not provide "an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," but it identified two "central considerations": "*how* and *why* the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33 (emphasis added). Put another way, proper analogical reasoning under *Bruen* asks "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133 (emphasis and quotations omitted).

Applying these metrics, Section 922(g)(1)'s dispossession of felons imposes no "burden [on] a *law-abiding citizen's* right to armed self-defense."

---

[3] The *Jackson* panel's reference to the *Range* panel decision, *Range v. Att'y Gen.*, 53 F.4th 262 (3d Cir. 2022) (per curiam), *vacated*, 69 F.4th 96 (3d Cir. 2023), which, as the *Jackson* panel knew, had been vacated before the panel here issued its opinion, *see Jackson*, 69 F.4th at 502, does not undermine the panel's conclusion that historical regulations permit dispossessing Jackson, which it reached based on its own interrogation of the relevant historical analogues. *See Jackson*, 69 F.4th at 502-05 (independently recounting history).

Appellate Case: 22-2870     Page: 13     Date Filed: 07/27/2023 Entry ID: 5300346

*Bruen*, 142 S. Ct. at 2133 (emphasis added). And any burden imposed on felons'

rights is comparable to historical laws disarming the untrustworthy and less

severe than many historical punishments for felony offenses, which often

included the death penalty or forfeiture of one's entire estate. *See Jackson*, 69

F.4th at 503. Modern historical laws are also "comparably justified." *Bruen*, 142

S. Ct. at 2133. The historical laws outlined in the panel opinion sought to

adequately punish felons, deter recidivism, and protect society from the

untrustworthy and those unable to comply with legal norms. *See Jackson*, 69

F.4th at 503-04. Section 922(g)(1) serves a more limited but equally justified

purpose: to protect society from gun violence committed by felons, who have

previously shown disregard for society's laws and pose a risk of danger to

society. *Id.* at 504.

     Finally, to the extent Jackson contends (*see* Pet. 4-5) that the government

was required to identify a "distinctly similar" analogue to demonstrate a

historical tradition for disarming him, he is wrong. Under *Bruen*, if a modern

regulation "addresses a general societal problem that has persisted since the 18th

century, the lack of a distinctly similar historical regulation" can be "relevant

evidence" that the challenged regulation is inconsistent with the Second

Amendment. *Bruen*, 142 S. Ct. at 2131. But a "distinctly similar" regulation is

not *necessary* to uphold the regulation. *Bruen* set out a single test, rooted in

"analogical reasoning," that turns on whether a modern law is "relevantly similar" to "historical analogue[s]"; analogues that clear that threshold are sufficient to justify firearms regulations, whether they are "distinctly similar" or not. *Id*. at 2131-33.

## II. The conflict between the panel opinion and the Third Circuit's reasoning in *Range* does not warrant en banc review.

Jackson's contention (Pet. 2-4) that rehearing is warranted to reconcile the panel opinion with *Range* is also incorrect. In *Range*, the en banc Third Circuit held that the government failed to demonstrate a historical tradition of disarming Bryan Range, whose sole disqualifying conviction, a Pennsylvania misdemeanor punishable by up to five years in prison, was for understating his income on a food stamp application in 1995. *Range*, 69 F.4th at 98. In reaching that conclusion, the Third Circuit held that the government failed to demonstrate a historical tradition of disarming Range or "people like Range." *Id*. at 106.

Jackson is correct that, whereas the panel opinion here found "no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)," 69 F.4th at 502, *Range* rejected the government's status-based arguments and found Section 922(g)(1) unconstitutional as applied to Range. Even so, en banc review is not warranted for at least three reasons.

11

*First*, the panel opinion's conclusion that there is a historical tradition of disarming felons like Jackson is correct. The panel opinion correctly held that "Congress acted within the historical tradition when it enacted § 922(g)(1)." *Jackson*, 69 F.4th at 505. And it properly adhered to the Supreme Court's repeated statements that the Second Amendment extends only to "law-abiding citizen[s]" and that its opinions "should [not] be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 501-03, 505 & n.3 (quotations omitted). Because the historical tradition confirms those statements, the panel properly concluded that Section 922(g)(1) "is not unconstitutional as applied to Jackson based on his particular felony convictions." *Id.* at 501.

For its part, the *Range* majority made several analytical missteps in finding Section 922(g)(1) unconstitutional as applied to Range. First, the *Range* majority rejected the Supreme Court's repeated assurances that felon dispossession statutes are "longstanding" and "presumptively lawful." *Range*, 69 F.4th at 114 (Shwartz, J., dissenting) (quotations omitted). Second, the *Range* majority "discount[ed] the importance of the Supreme Court's emphasis on law-abidingness as a limitation on the Second Amendment right." *Id.* And third, the *Range* majority required the government to "identify a historical crime, including its punishment," that mirrored Range's conviction, notwithstanding *Bruen*'s

12

assurance that its framework does not demand a "dead ringer" or a "historical twin." *Id.* at 114-15 (quotations omitted). *Range*'s analysis and conclusion render it inconsistent with *Heller* and *Bruen*.

*Second*, *Range* is out of step with the overwhelming weight of pre- and post-*Bruen* authority, which accords (and agrees) with the *Jackson* panel's analytical approach and bottom-line conclusion. Several pre-*Bruen* court of appeals decisions categorically upheld felon-possession prohibitions under some version of a text-and-history analysis. *See, e.g.*, *Medina v. Whitaker*, 913 F.3d 152, 157-61 (D.C. Cir. 2019); *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (per curiam); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009); *accord Hamilton v. Pallozzi*, 848 F.3d 614, 625-27 (4th Cir. 2017); *see also Heller v. District of Columbia*, 670 F.3d 1244, 1278 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (noting that "the Court in *Heller* affirmatively *approved* a slew of gun laws," including "felon-in-possession laws," "based on a history- and tradition-based test") (emphasis in original). *Range* is the only post-*Bruen* circuit court decision finding Section 922(g)(1) unconstitutional.[4] And all but one of the approximately 200 post-*Bruen*

---

[4] In *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023), a divided panel of the Seventh Circuit remanded a civil plaintiff's Second Amendment challenge to Section 922(g)(1) to the district court to undertake the *Bruen* analysis in the

Appellate Case: 22-2870   Page: 17   Date Filed: 07/27/2023 Entry ID: 5300346

district court decisions to address the question have concluded that Section 922(g)(1) is unconstitutional. *See United States v. Bullock*, --- F. Supp. 3d ---, No. 3:18-cr-165, 2023 WL 4232309, at *2 (S.D. Miss. June 28, 2023). Some district court decisions have even questioned or distinguished *Range*, favoring instead the *Jackson* panel's authoritative understanding of the Second Amendment's reach. *See, e.g.*, *United States v. Keels*, No. 23-cr-20085, 2023 WL 4303567, at *6 (E.D. Mich. June 30, 2023) (noting that "[e]very other appellate court to consider section 922 since *Bruen* has upheld the statute's constitutionality" and agreeing with *Jackson* that there is no need for felony-by-felony litigation regarding the constitutionality of Section 922(g)(1)); *United States v. Jordan*, No. 1:23-cr-159, 2023 WL 4267602, at *2 (N.D. Ohio June 29, 2023) ("The Court declines to follow *Range* as it finds that the Supreme Court has been *consistently* clear that its Second Amendment jurisprudence has cast no doubt on the validity of the prohibitions on the possession of firearms by convicted felons.") (emphasis in original); *United States v. Kearney*, No. 4:23-cr-29, 2023 WL 3940106, at *1 n.1 (E.D. Va. June 9, 2023) (declining to apply *Range*).

*Third*, and in any event, the Third Circuit described its decision as "narrow." *Range*, 69 F.4th at 106. The *Range* court did not, as Jackson suggests

---

first instance. That court did not address the merits of the defendant's challenge or suggest how the court would rule on that challenge.

Appellate Case: 22-2870     Page: 18     Date Filed: 07/27/2023 Entry ID: 5300346

(Pet. i), conclude that Section 922(g)(1) is unconstitutional "as applied" to anyone "convicted only of a nonviolent felony offense." *Range* held only that the government did not demonstrate Section 922(g)(1)'s constitutionality as applied to Range, whose disqualifying offense was a decades-old state-law misdemeanor conviction for less than $2,500 worth of food-stamp fraud, an offense for which he served no jail time. *Range*, 69 F.4th at 98, 106; *see also id.* at 105 (comparing the government's historical analogues to "Range and his individual circumstances"); *id.* at 103 (similar); *id.* at 104 & n.9 (similar). The Third Circuit would not necessarily reach the same result in this case, where the underlying felony convictions include drug trafficking. *See, e.g.*, *Folajtar v. Att'y Gen.*, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting) ("Disarming burglars and drug dealers makes sense because their past crimes were inherently dangerous.").

Finally, contrary to Jackson's contention (Pet. 3), there is no real risk that the panel opinion's correct historical analysis will permit legislatures to arbitrarily disarm disfavored groups or revive the means-end scrutiny that *Bruen* rejected. So long as *Bruen* remains the operative analytical framework, the government will have to demonstrate, using representative historical analogues, how and why any modern regulation is consistent with those analogues. *Bruen*, 142 S. Ct. at 2133. The government did that here.

Appellate Case: 22-2870    Page: 19    Date Filed: 07/27/2023 Entry ID: 5300346

**III.** **Rehearing is not warranted based on this Court's recent decision in *Sitladeen*.**

Jackson further contends (Pet. 5-9) that the panel opinion conflicts with *Sitladeen*, which upheld 18 U.S.C. § 922(g)(5)(A)'s prohibition on firearm possession by unlawfully present noncitizens, relying on circuit precedent holding that "unlawful aliens are not part of 'the people' to whom the protections of the Second Amendment extend." *Sitladeen*, 64 F.4th at 987. Jackson argues that the panel opinion "correctly dispensed with an analysis of the scope of the Second Amendment right," but that *Sitladeen* "*requires* such an analysis," Pet. 5 (emphasis added; capitalization omitted), and this Court should grant review to "make clear" that the "correct approach" is to avoid a "scope-of-the-right analysis," *id.* at 7. This Court should decline that invitation.

As a threshold matter, the "conflict" Jackson identifies does not exist. Jackson reads *Sitladeen* to "require[ ]" that courts always analyze "whether the person affected by a firearm prohibition 'is part of "the people" to whom the protections of the Second Amendment extend.'" Pet. 6 (quoting *Sitladeen*, 64 F.4th at 987). But *Sitladeen* merely held that, under circuit precedent, the defendant was not among "the people" covered by the Second Amendment. 64 F.4th at 985-87. It did not say courts must conduct the same inquiry in every case. Thus, by not explicitly discussing whether Jackson was part of "the people," the panel decision here did not conflict with *Sitladeen*.

16

Indeed, the panel here had no reason to ask whether Jackson was one of "the people" because it concluded that there is a historical tradition of disarming felons. *Jackson*, 69 F.4th at 505-06. That conclusion—rooted in the panel's determination that Section 922(g)(1) was constitutional whether Jackson is part of "the people" or not—rendered any inquiry into the scope of that term, and whether Jackson falls within it, unnecessary. Furthermore, the panel's decision to pretermit that analysis was consistent with the "flexibility" that courts have "to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

In any event, it would not be appropriate to "reconsider the holding of *Sitladeen*" here. Pet. 6. This case involves a different provision than *Sitladeen* and presents no basis to reconsider *Sitladeen*'s holding that unlawfully present non-citizens are not part of "the people." Moreover, the panel decision did not discuss *Sitladeen* or the "scope of the right" approach; indeed, Jackson believes that the panel "correctly" avoided undertaking a "scope of the . . . right" analysis. Pet. 5 (capitalization omitted). And this Court has already denied rehearing in *Sitladeen*. No. 22-1010, 2023 WL 3330794, at *1 (order denying en banc rehearing). That case does not support his request for rehearing en banc here.

17

## CONCLUSION

The petition for rehearing en banc should be denied.

Respectfully submitted,

ANDREW M. LUGER
United States Attorney

KENNETH A. POLITE, JR.
Assistant Attorney General

LISA KIRKPATRICK
Appellate Chief
DAVID M. GENRICH
Assistant United States Attorney
United States Attorney's Office
District of Minnesota

LISA H. MILLER
Deputy Assistant Attorney General

/s/ Mahogane D. Reed
MAHOGANE D. REED
Attorney, Appellate Section
Criminal Division
United States Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 615-1170
mahogane.reed@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Mahogane D. Reed
Mahogane D. Reed

## CERTIFICATE OF COMPLIANCE

I hereby certify that the response has been scanned for viruses and that to the best of my knowledge the response is virus free.

I further certify that Word software was used to prepare this response.

I further certify that this response complies with the type-volume limitations as set forth in the Court's Order of September 15, 2022, and Federal Rule of Appellate Procedure 35(e). There are 3,839 words using Calisto MT 14-point font.

<u>/s/ Mahogane D. Reed</u>
Mahogane D. Reed