# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 22-2870

United States of America

Appellee

v.

Edell Jackson

Appellant

_____

Appeal from U.S. District Court for the District of Minnesota
(0:21-cr-00051-DWF-1)
_____

# ORDER

The petition for rehearing en banc is denied. The petition for panel rehearing is also denied.

Judge Erickson, Judge Grasz, Judge Stras, and Judge Kobes would grant the petition for rehearing en banc.

STRAS, Circuit Judge, with whom ERICKSON, GRASZ, and KOBES, Circuit Judges, join, dissenting from the denial of rehearing en banc.

I have no special affection for felons either, but the Second Amendment does not care. It says what it says, and so do the Supreme Court decisions interpreting it. *See generally United States v. Rahimi*, 144 S. Ct. 1889 (2024); *N.Y. State Rifle &*

*Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).  And what *Jackson* says about as-applied challenges conflicts with both.[1]

Start with *Rahimi*.  It was a facial challenge, but the Supreme Court dealt with it by examining whether the statute was "constitutional in some of its *applications*," including in "Rahimi's own case."  *Rahimi*, 144 S. Ct. at 1898 (emphasis added); *see also United States v. Veasley*, 98 F.4th 906, 909–10, 917–18 (8th Cir. 2024) (resolving a facial challenge to the drug-user-in-possession statute, 18 U.S.C. § 922(g)(3), in the same way).  It reviewed the historical analogues, surety and going-armed laws, *see Rahimi*, 144 S. Ct. at 1899–1902, and held that an individual like Rahimi—someone who has been "found by a court to pose a credible threat to the physical safety of another[—]may be temporarily disarmed consistent with the Second Amendment," *id.* at 1903.  If the Court meant to cut off all as-applied challenges to disarmament laws, as *Jackson II* concludes, it would have been odd to send that message by deciding *Rahimi* based on how *his* as-applied challenge would have gone.  *See id.* at 1902 (stating that "[s]ection 922(g)(8)'s restriction was temporary *as applied to Rahimi*" (emphasis added)); *id.* at 1901–02 (noting that § 922(g)(8) applies "only once a court has found that *the defendant* represents a credible threat to the physical safety of another" (emphasis added) (citation omitted)).  It would have just announced the law's across-the-board constitutionality and moved on, like *Jackson II* does.

---

[1]The new opinion deserves credit for correcting one error.  The first time around, *Jackson* placed the burden on the *defendant* to "show (1) that the Second Amendment protects his particular conduct, and (2) that his prior felony conviction is insufficient to justify the challenged regulation of Second Amendment rights." *United States v. Jackson* (*Jackson I*), 69 F.4th 495, 506 n.4 (8th Cir. 2023) (quoting *United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019)), *vacated*, 144 S. Ct. 2710 (2024).  Now the burden is on the correct party, the *government*, which must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *United States v. Jackson* (*Jackson II*), 110 F.4th 1120, 1126 (8th Cir. 2024).

In fact, Justice Gorsuch wrote separately to make that point clear. As he put it, "Rahimi's facial challenge to § 922(g)(8) *necessarily* leaves open the question whether the statute might be unconstitutional *as applied in 'particular circumstances.'*" *Id.* at 1909 (Gorsuch, J., concurring) (emphasis added) (quoting *United States v. Salerno*, 481 U.S. 739, 751 (1987)). Not a single Justice has suggested otherwise. Not in *Heller*. Not in *Bruen*. And certainly not in *Rahimi*.

*Jackson II* packs a double whammy. It deprives tens of millions of Americans of their right "to keep and bear Arms" for the rest of their lives, at least while they are in this circuit. U.S. Const. amend. II; *see* Sarah K.S. Shannon et al., *The Growth, Scope, and Spatial Distribution of People with Felony Records in the United States, 1948–2010*, 54 *Demography* 1795, 1808 (2017). And it does so without a finding of "a credible threat to the physical safety" of others, *Rahimi*, 144 S. Ct. at 1903, or a way to prove that a dispossessed felon no longer poses a danger, *see United States v. Jackson*, 85 F.4th 468, 478 (8th Cir. 2023) (Stras, J., dissenting from denial of reh'g en banc). There is no Founding-era analogue for such a sweeping and undiscriminating rule. *See id.* at 472 (explaining that "[o]f the states that protected the right to keep and bear arms, *none* disarmed non-dangerous felons"); *see also Rahimi*, 144 S. Ct. at 1909–10 (Gorsuch, J., concurring) ("We do not resolve whether the government may disarm an individual permanently.").

It gets worse. *Jackson II* turns constitutional law upside down, insulating felon-dispossession laws from Second Amendment scrutiny of *any* kind. "Facial challenges are disfavored." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008); *see also Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2411 (2024) (Barrett, J., concurring) (noting that "facial challenge[s]" can "force[] . . . court[s] to bite off more than [they] can chew," unlike "as-applied challenge[s], . . . [which] enable courts to home in on" more "[]specific questions"); *id.* at 2421 (Thomas, J., concurring in the judgment) (observing that as-applied challenges embody the "judiciary's proper role" of resolving "actual cases or controversies" and avoid the "constitutional and practical" difficulties of facial challenges (citation omitted)). But after *Jackson II*, they are the only kind a felon may bring. *See*

*Jackson II*, 110 F.4th at 1125 (holding that § 922(g)(1)'s constitutionality does not vary "felony-by-felony" or felon by felon). And now, it is impossible to prevail in one. *See id.*; *see also Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." (citation omitted)).

Clinging to a recycled line from *District of Columbia v. Heller*, 554 U.S. 570 (2008), is no excuse. *Heller* said only that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," characterizing them as "presumptively lawful regulatory measures." *Id.* at 626, 627 n.26. For one thing, this line is dictum because it tells us what *Heller* did *not* do rather than what it did. *See Rahimi*, 144 S. Ct. at 1944 n.7 (Thomas, J., dissenting). For another, it is just a presumption. As I have explained before, "a measure can be presumptively constitutional and still have constitutionally problematic applications. As-applied challenges exist for exactly this reason." *Jackson*, 85 F.4th at 477 (Stras, J., dissenting from denial of reh'g en banc). Making the leap from *presumptively* constitutional to *always* constitutional, like *Jackson II* does, is too much for that overused line to bear, no matter how you read it.

Other courts have not made the same mistake. Some have already entertained as-applied challenges. *See, e.g.*, *United States v. Diaz*, 116 F.4th 458, 467–71 & n.4 (5th Cir. 2024) (concluding that Diaz's as-applied challenge to § 922(g)(1) failed but "not foreclos[ing]" others "by defendants with different predicate convictions"); *United States v. Moore*, 111 F.4th 266, 268–72 (3d Cir. 2024) (analyzing § 922(g)(1) as applied to a defendant charged with possessing a firearm while on supervised release). Another has recognized their availability. *See United States v. Williams*, 113 F.4th 637, 645–46, 649–50, 657–61 (6th Cir. 2024) (holding that *Bruen* and *Rahimi* require courts to consider as-applied challenges to the felon-in-possession statute); *see also United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024) ("assum[ing] for the sake of argument that there is some room for as-applied challenges"); *United States v. Duarte*, 108 F.4th 786, 790–91 (9th Cir. 2024)

(VanDyke, J., dissenting from grant of reh'g en banc) (explaining that the government must show that *the defendant* "likely would threaten or ha[s] threatened another with a weapon" (quoting *Rahimi*, 144 S. Ct. at 1902)); *cf. United States v. Price*, 111 F.4th 392, 413 (4th Cir. 2024) (en banc) (Agee, J., concurring in the judgment) (recognizing that whether "§ 922(g)(1) is unconstitutional as applied to certain, nonviolent felons . . . is far from settled"). *Jackson II* is the post-*Rahimi* outlier.

Getting to the right answer should not have been hard. Before *Jackson II*, we invited as-applied challenges to the drug-user-in-possession statute, 18 U.S.C. § 922(g)(3), which is found in the same section of the U.S. Code. *See Veasley*, 98 F.4th at 908–09 (stating that "the door [is] open" to those as-applied challenges), *cert. denied*, — S. Ct. —, 2024 WL 4427336 (Oct. 7, 2024). Why one but not the other? *Cf. id.* at 912–16 (analogizing drug users to the mentally ill); *Heller*, 554 U.S. at 626, 627 n.26 (describing the disarmament of the mentally ill as "longstanding" and "presumptively lawful"). *Jackson II* does not say.

"[P]rudence and practicality" cannot be the answer, *Jackson*, 85 F.4th at 478 (Stras, J., dissenting from denial of reh'g en banc) (citing *Jackson I*, 69 F.4th at 502 & n.2), particularly when *Heller*, *Bruen*, and *Rahimi* "demand[] a test rooted in the Second Amendment's text, as informed by history," *Bruen*, 597 U.S. at 19. Besides, assessing dangerousness is something we ask district courts "to [do] every day." *Jackson*, 85 F.4th at 478 (Stras, J., dissenting from denial of reh'g en banc) (pointing out that district courts routinely do it during pretrial proceedings and at sentencing). And so far, it has gone smoothly for the ones that have tried it.[2]

---

[2] At least one as-applied challenge has been successful. *See United States v. Smith*, No. 24-CR-00228-GKF, 2024 WL 4138621, at *9 (N.D. Okla. Sept. 10, 2024) (dismissing a § 922(g)(1) indictment where "the government [did] not show[] that drug possession [was] . . . linked to violence such that [the defendant] would present a danger to the public if armed" (citation omitted) (emphasis omitted)). Others not so much, but the reason has not been the difficulty of the analysis. *See, e.g., United States v. Hines*, No. 3:22-cr-157, 2024 WL 4252569, at *4–*5 (N.D. Ohio Sept. 12, 2024) (concluding that the defendant's prior convictions, including

-5-

*Jackson II* has other problems too. A good place to start is its reliance on the "virtue theory." *Rahimi* could not have been clearer in rejecting it: no one "may be disarmed simply because he is not responsible." *Rahimi*, 144 S. Ct. at 1903 (recognizing that *Heller* and *Bruen* "used the term 'responsible' to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right," not those who don't). The label is, as the Court observed, imprecise and "vague." *Id.* But the more fundamental problem is its inconsistency with the Second Amendment's text, which gives the "right to keep and bear arms" to the "people," U.S. Const. amend. II, "the virtuous, the non-virtuous, and everyone in between," *Jackson*, 85 F.4th at 473 (Stras, J., dissenting from denial of reh'g en banc). *Jackson II* substitutes one word for another, "law-abiding" for "responsible," but the idea is the same: "disarm[ing] citizens who are . . . unwilling to obey the law." *Jackson II*, 110 F.4th at 1126.

*Rahimi* and *Bruen* require more. "[M]odern" laws must be "relevantly similar" to their historical counterparts, in terms of both their "burden" and "justifi[cation]." *Bruen*, 597 U.S. at 28–29; *see Rahimi*, 144 S. Ct. at 1898 (explaining that the "[w]hy and how" of firearm regulations "are central to [the analogical] inquiry"); *see also Diaz*, 116 F.4th at 469. The restriction on domestic abusers could be constitutionally applied to Rahimi, for example, because it was "temporary," lasting only while a restraining order was in place. *Rahimi*, 144 S. Ct. at 1902; *see also United States v. Connelly*, 117 F.4th 269, 276, 282 (5th Cir. 2024) (concluding that historical analogues that disarmed "actively intoxicated" people do

---

one for "improperly handling firearms in a motor vehicle," provided enough evidence of dangerousness); *United States v. Powell*, No. 22-cr-293, 2024 WL 4502226, at *3 (D.D.C. Oct. 16, 2024) (reasoning that the defendant could not have prevailed on an as-applied challenge to § 922(g)(1) because his prior conviction for "assault with a dangerous weapon" made it "easy to conclude that he presents a credible threat to the safety of others" (quoting *Rahimi*, 144 S. Ct. at 1902)); *United States v. Vano*, No. 23-20061-01-DDC, 2024 WL 4202386, at *10–*11 (D. Kan. Sept. 16, 2024) (upholding the constitutionality of § 922(g)(1) as applied to the defendant because his "prior convictions—one which involved use of a firearm and both which involved physical violence—represent credible threats").

not justify indefinitely disarming an "occasional drug use[r]" under § 922(g)(3) because "[t]he Founders . . . allowed alcoholics to carry firearms while sober (and possess them generally)"). It also "mitigate[d] [the] demonstrated threat[] of physical violence" that he posed, *Rahimi*, 144 S. Ct at 1901, just like Founding-era surety laws that required "reasonable cause to fear an injury, or breach of the peace" before an individual could be completely disarmed, *Bruen*, 597 U.S. at 55 (quoting Mass. Rev. Stat., ch. 134, § 16 (1836)); *see Rahimi*, 144 S. Ct. at 1902.

*Jackson II*, by contrast, makes no attempt to explain how the burden imposed by the felon-in-possession statute, which lasts for a lifetime, is comparable to any of the Founding-era laws it discusses. Indeed, most left room for "individuals . . . to show they were not as dangerous as the government thought." *Jackson*, 85 F.4th at 476 (Stras, J., dissenting from denial of reh'g en banc). The justification gets short shrift too. All *Jackson II* offers is deference to Congress's blanket determination that a group numbering in the tens of millions and ranging from murderers to ketchup-bottle tamperers categorically "present[s] an unacceptable risk of danger if armed."[3] *Jackson II*, 110 F.4th at 1128; *see Jackson*, 85 F.4th at 477 (Stras, J., dissenting from denial of reh'g en banc) ("Felons . . . are different[,] . . . [y]et § 922(g)(1) does not discriminate."); *see also* Oral Argument at 36:27, *Range v. Att'y Gen. U.S.*, No. 21-2835 (3d Cir. Oct. 9, 2024) (en banc) (Porter, J.) (questioning what would happen if "jaywalking or failing to return [a] library book[]" became felonies). Courts must decide for themselves whether new restrictions are "analogous" to old ones, not just let the government "effectively declare" they are. *Bruen*, 597 U.S. at 31 (discussing "sensitive places"); *see United States v. Garcia*, 115 F.4th 1002, 1020 (9th Cir. 2024) (VanDyke, J., dissenting from denial of reh'g en banc) (recognizing that "[i]f the label a legislature gives a certain crime is

---

[3]Not to mention that many felonies today were not even crimes in the late 18th century. *See Lange v. California*, 594 U.S. 295, 311 (2021) ("The felony category then was a good deal narrower than now."). Felon-in-possession laws themselves are a prime example. *See Jackson*, 85 F.4th at 472 (Stras, J., dissenting from denial of reh'g en banc) (noting that § 922(g)(1)'s predecessor was not enacted until 1961).

dispositive to whether a defendant can be disarmed, then we are . . . merely deferring to legislative interest-balancing").

Neither version of *Jackson* is consistent with the original public meaning of the Second Amendment. Now *Jackson II* doesn't even follow what the Supreme Court just said about it. The constitutionality of the felon-in-possession statute is as "exceptionally important" as ever, *Jackson*, 85 F.4th at 479 (Stras, J., dissenting from denial of reh'g en banc) (quoting Fed. R. App. P. 35(a)(2)), so for a second time, I vote to grant.

_____

November 05, 2024

Order Entered at the Direction of the Court:
Acting Clerk, U.S. Court of Appeals, Eighth Circuit.
_____
    /s/ Maureen W. Gornik